THOMPSON, Respondent, v. WORDEMAN, Sheriff, Appellant.

(266 N. W. 142.)

(File No. 7864.   Opinion filed April 2, 1936.)

*David F. Heffron*, of Martin, and *W. J. Hooper*, of Gregory, for Appellant.

*N. B. Bartlett*, of Martin, for Respondent.

CAMPBELL, J.   Plaintiff, a resident and taxpayer of Bennett county, S. D., owned and had therein certain cattle against which

there were delinquent and unpaid taxes. Chapter 194, Laws of 1933, reads as follows:

"Adjustment and Payment of Delinquent Taxes

"An Act Entitled, An Act Providing for the Adjustment and Payment of Delinquent Taxes, and Declaring an Emergency.

"Be It Enacted by the Legislature of the State of South Dakota:

"Section 1. Any person having delinquent taxes charged against him or against his property may apply to the Board of County Commissioners of the County wherein such taxes are payable to adjust and pay such taxes as follows:

"The application shall be in writing, executed in triplicate, and shall show:

"(1) The full name and address of the applicant.

"(2) The legal description of all property against which said taxes are a lien or charge.

"(3) An itemized statement of such taxes and the total amount thereof, including interest, penalty and costs, if any.

"(4) That there is no tax sale certificate covering any of said taxes outstanding and held other than by the county.

"(5) That the applicant has deposited with the county treasurer sufficient money to pay all taxes assessed against applicant and said property in the year 1932 and due and payable in 1933 but not yet delinquent, such deposit to become payment on acceptance of the application.

"(6) That the applicant contracts and agrees to pay all prior and delinquent taxes in ten equal annual designated payments beginning one year after the acceptance of the application and agrees that the lien of such taxes and the obligation of applicant to pay same shall not cease or diminish unless or until applicant shall have made each and all of such ten annual payments as contracted.

"Section 2. If the Board of County Commissioners find that the statements contained in said application are true and correct, it shall grant same by resolution and the chairman shall endorse such approval on the back of each triplicate application and one copy shall remain in the auditor's office, one to the county treasurer and one shall be forthwith delivered to the applicant. If the Board

find that any required statement is not contained in said application or that any statement is not true and correct, it shall deny same.

"Section 3. On receipt of an approved triplicate application the county treasurer shall receive the money on deposit with him as payment of the current taxes and issue receipts therefor with proper endorsements thereon referring to prior unpaid taxes and to the applicant's contract, and said receipts shall not be a bar to the collection of any of said prior taxes. But all proceedings to collect such prior taxes shall be stayed unless and until the applicant shall fail to make one or more of the contract payments when due. In case of such default, the county treasurer shall proceed to collect all of such unpaid delinquent taxes as though no contract had ever been made hereunder.

"Section 4. No applications hereunder shall be made or granted after October 31, 1933.

"Section 5. Whereas, it is imperative that taxes due and payable during the current year shall be paid before they become delinquent, and that a means of adjusting and paying unusual amounts of delinquent taxes shall be immediately provided for the many distressed property owners of the state, otherwise likely to lose their property, this act is necessary for the immediate support of the State Government and its existing public institutions, and an emergency is hereby declared to exist and this act shall be in full force and effect from and after its passage and approval.

"Approved February 25, 1933."

On October 28, 1933, plaintiff paid the first half of the taxes assessed against said cattle in the year 1932 (which became due and payable January 1, 1933) and made a contract with Bennett county pursuant to the statute for the payment of all prior and deliquent taxes on the cattle in ten equal annual installments of $14.50 each. Parenthetically we state that we do not desire to be understood as holding or deciding that payment of one-half the taxes assessed in 1932 was a sufficient compliance with subdivision 5 of Section 1 of the statute. Thereafter, in October or November, 1934, Plaintiff paid the first installment due pursuant to the terms of said contract. He failed to pay any subsequent taxes levied and assessed against the cattle. In the fall of 1934 he re-

moved some of said cattle from Bennett county to the state of Nebraska. In the spring of 1935 the treasurer of Bennett county was advised, and believed, that plaintiff was about to remove the remainder of said cattle from Bennett county and from the state of South Dakota and in March, 1935, acting under the authority of section 6772, Rev. Code of 1919, the county treasurer issued a distress warrant to the sheriff of Bennett county for all taxes against said cattle, including the taxes embraced in the contract of October 28, 1933, upon which contract nine installments were unpaid, but none of said installments past due or delinquent. By virtue of the distress warrant the sheriff levied upon twenty-three head of the cattle and gave notice of sale and was about to sell the same to satisfy the claim of the county for all taxes theretofore levied and assessed on said cattle and unpaid, including those taxes represented by the nine future-due installments of the contract of October 28. Plaintiff thereupon instituted the present action in circuit court to enjoin the sale. A temporary restraining order issued and thereafter, upon hearing pursuant to order to show cause, said order was modified under date of April 19, 1935, in such fashion as to restrain the sale so far as concerned the collection of the taxes represented by the nine future-due installments of the contract of October 28 and permit the sale so far as concerns the collection of the other and subsequent taxes involved. From so much of the order of April 19 as prohibited sale by the sheriff for the purpose of collecting the taxes represented by the nine future-due installments of the contract of October 28, 1933, defendant sheriff has appealed to this court. No brief has been filed by respondent.

■ Plaintiff having taken no appeal from so much of the order as permitted sale under the distress warrant for all unpaid taxes other than those represented by the contract, we must assume, for the purposes of this appeal, that plaintiff-respondent was about to remove this personal property out of the county and that the issuance of the distress warrant per se was lawful and proper under the provisions of sections 6772 and 6773, Rev. Code 1919, which read respectively as follows:

"After taxes have been levied and before the duplicate tax lists have been officially placed with the county treasurer, if, in the opinion of the county treasurer, any person having personal prop-

erty assessed for the current year, upon which the taxes are unpaid, be about to remove the same out of the county or dispose of the same, he shall, if in his judgment he deems it advisable, obtain from the county auditor, and it is made the duty of the county auditor to furnish a statement of the personal property taxes extended or about to be extended against such person, whereupon it shall be the duty of the county treasurer to cause such taxes to be collected by distress and sale."

"After the duplicate tax lists have been officially placed with the county treasurer, if in his opinion any person having personal property assessed for the current year, upon which taxes are unpaid, be about to remove the same out of the county or dispose of the same, he shall, if in his judgment he deems it advisable, cause such taxes to be collected by distress and sale."

■ The sole question before us, therefore, may be thus stated. If a taxpayer has contracted with his county to pay past-due and delinquent taxes upon personal property in ten equal annual installments pursuant to chapter 194, Laws 1933, may he thereafter (and at a time when some of the installments on said contract are still unpaid but none of them delinquent according to the terms thereof) remove said personalty from the county (or dispose thereof) without having the same liable to distress and sale for the taxes represented by the future-due installments of his contract if, in the judgment of the county treasurer, such enforcement of payment by distress and sale is deemed advisable?

Appellant sheriff maintains that this question must be answered in the negative and urges that chapter 194, Laws 1933, is unconstitutional and void in its entirety. We do not believe it is necessary to consider the constitutional question in this case.

From the provisions of sections 6772, 6773, Rev. Code 1919, above quoted, it is clearly the contemplation of our law that a taxpayer should not be permitted to remove personalty from his county (or dispose thereof) with taxes levied and assessed against said personalty unpaid (even though they may not yet have ripened into a lien thereon) if it is likely as a result of such removal (or disposition) that payment of the tax may be defeated or delayed. The matter is left to a considerable degree to the discretion of the county treasurer. It is obvious, as a practical matter, that if a

taxpayer removes a relatively small part of his personalty from the county, leaving therein an amount of property ample to insure the payment of taxes as and when due, there is little likelihood that such removal will have any adverse effect upon the collection of the tax, and there is little necessity for the enforcement of payment as a condition precedent to removal. On the other hand, if a taxpayer is about to remove out of the county or dispose of all or nearly all of his property, there is little assurance that the county will be able to collect the tax money from the remainder, and prudence dictates that payment of the tax should be exacted before the removal (or disposition) is permitted. This is the policy and purpose of the law. The language of our present statute relating to the matter is taken from chapter 296, Laws 1915, but a very similar provision has been in force in this state ever since the enactment of a comprehensive law relating to assessment and taxation as chapter 28, Laws 1897. See particularly section 98 of said act, which became, with little change, section 2162, Rev. Pol. Code 1903. It thus appears that it has been the public policy of this state, as declared by the Legislature, for nearly forty years that a taxpayer should not be permitted to remove from the county or dispose of his personal property against which taxes have been assessed and levied (even if the taxes were not yet due and payable, and even if they had not become a lien) without first paying such taxes if the county treasurer deemed is advisable to require payment of the tax before the removal or disposition; in other words, if the county treasurer was of the opinion that such removal or disposition would or might delay or prejudice the county in receiving payment of the taxes levied and assessed. Collection of taxes is essential to the existence and continuance of government. The wisdom of this particular provision is apparent. If respondent had not made the contract of October 28, 1933, it is clear that he could not have removed his cattle or disposed of them without having them subject to distress and sale for the taxes which are now embodied in and represented by that contract if the county treasurer had deemed it advisable to issue a distress warrant therefor. We do not believe that the Legislature, by the passage of chapter 194, Laws 1933, had any intention whatsoever of changing the law in this regard. Indeed we very much doubt

whether the Legislature could validly so do. We realize that chapter 194, Laws 1933, specifically provides that when a contract as therein contemplated has been made "all proceedings to collect such prior taxes shall be stayed unless and until the applicant shall fail to make one or more of the contract payments when due." Section 3. But we think this language must be construed with the other statute law of this state and must be deemed subject to the implied condition that the taxpayer will not remove the property from the county or dispose of it. If he is about to remove such property or dispose of it, then we 'think that the county treasurer may, if he deems it advisable, issue a distress warrant for the unpaid taxes represented by the contract exactly as he might for any other unpaid taxes and proceed to the collection thereof, notwithstanding the contract and notwithstanding the fact that there is no delinquency under the terms of the contract. In other words, we think that, so far as concerns the matter of removal from the county or disposition, the status of property upon which there are unpaid taxes lawfully levied and assessed is in no manner changed by putting those taxes into a ten-year installment contract under the provisions of chapter 194, Laws 1933.

We are therefore of opinion that the court erred in restraining, under the circumstances shown by this record, the collection by distress and sale of the taxes represented by the unpaid installments of the contract of October 28, 1933, and the order appealed from must be, and it is, reversed.

POLLEY, P. J., and ROBERTS and WARREN, JJ., concur.

RUDOLPH, J., not sitting.